IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NILS JOHANNESSEN
1513 BAYVIEW DRIVE
HAVRE DE GRACE, MARYLAND 21078
                                             Plaintiff,
                  v.
SULZER MEDICA USA, INC.
A Division of Centerpulse
9900 SPECTRUM DRIVE
AUSTIN, TEXAS 77406
                  and

CENTERPULSE USA, INC.
9900 SPECTRUM DRIVE
AUSTIN, TEXAS 77406                                           CIVIL ACTION NO.:
                  and

SUN LIFE ASSURANCE COMPANY OF CANADA
1 SUN LIFE EXECUTIVE PARK
WELLESLEY HILLS, MASSACHUSETTS 02481
                  and

ZIMMER HOLDINGS, INC., as successor          **JURY TRIAL DEMANDED**
in interest to Centerpulse USA Inc. and/or
Sulzer Medica
1800 WEST CENTER STREET
WARSAW, INDIANA 46581
                  and

EV3
4600 NATHAN LANE NORTH
PLYMOUTH, MINNESOTA 55442
                                             Defendants

## CIVIL ACTION -- COMPLAINT

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked under the provisions of 29 U.S.C. §
1132(a)(1)(B) and 29 U.S.C. § 1132(e)(2) of the Employee Retirement Income Security Act
("ERISA"); 28 U.S.C. § 1331 as a civil action arising under the Constitution, laws or treaties of the
United States; 28 U.S.C. § 1332 as a matter in controversy exceeding, exclusive of interest and

costs, the sum of $100,000 and with diversity of citizenship between Plaintiff and all Defendants, and, 28 U.S.C. § 1367, relating to jurisdiction over pendent and ancillary state law claims.

2.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a)(2) and (c), in that all Defendants are subject to personal jurisdiction in such District. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred in that District.

## THE PARTIES

3.      Plaintiff, Nils Johannessen is an adult individual who resides at 1513 Bayview Drive, Havre De Grace, Maryland 21078. Mr. Johannessen is currently 50 years old.

4.      Plaintiff formerly owned a home at 611 Comstock Avenue, Downingtown, Pennsylvania 19335.  However, as a result of Defendants' breach of fiduciary duties, ERISA violations, bad faith and other deceptive conduct upon which Plaintiff relied as alleged herein, Plaintiff had to sell his home.

5.      Defendant, Sulzer Medica USA, Inc. (hereinafter "Sulzer Medica") is a foreign corporation with its principle place of business located at 3 East Greenway, Suite 1600, Houston, Texas 77406.

6.      At all times relevant hereto, Sulzer Medica regularly conducts or conducted business within the Eastern District of Pennsylvania and is or was authorized to do business in the Commonwealth of Pennsylvania.

7.      Defendant, Centerpulse, Inc. (hereinafter "Centerpulse") is a foreign corporation with its principle place of business located at 3 East Greenway, Suite 1600, Houston, Texas 77406.

8.      Upon information and belief at all times material hereto, Sulzer Medica is or was a division of Centerpulse.

9.      At all times relevant hereto, Centerpulse regularly conducts or conducted business within the Eastern District of Pennsylvania and is or was authorized to do business in the Commonwealth of Pennsylvania.

10.      Defendant, Sun Life Assurance Company of Canada (hereinafter "Sun Life") is a foreign corporation with its principle place of business located at 1 Sun Life Executive Park, Wellesley Hills, Massachusetts 02481.

11.      At all times relevant hereto, Sun Life was authorized to conduct business as an insurance company in the Commonwealth of Pennsylvania and regularly conducts or conducted business within the Eastern District of Pennsylvania.

12.      At all times relevant hereto, Sun Life provided the long term disability insurance at issue in this litigation.

13.      Defendant Zimmer Holdings, Inc. (hereinafter "Zimmer Holdings"), is a foreign corporation with its principal place of business at 1800 West Center Street, Warsaw, Indiana.

14.      At all times relevant hereto, Zimmer Holdings regularly conducts or conducted business within the Eastern District of Pennsylvania and is or was authorized to do business in the Commonwealth of Pennsylvania.

15.      Upon information and belief, Zimmer Holdings is a successor to Sulzer Medica.

16.      Defendant, EV3, is a foreign corporation with its principal place of business at 4600 Nathan Lane North, Plymouth, Minnesota.

17.      At all times relevant hereto, EV3 regularly conducts or conducted business within the Eastern District of Pennsylvania and is or was authorized to do business in the Commonwealth of Pennsylvania.

18.      Upon information and belief, EV3 is a successor to Sulzer Medica.

19.     At all times material hereto, Sulzer Medica, Centerpulse or their successors, Zimmer Holdings and EV3 were plan administrators of the employee benefit plan of which Plaintiff is a participant, as those terms are defined under ERISA.

20.     At all times material hereto, SunLife has acted as an administrator of the long-term disability insurance portion of the employee benefit plan created by Sulzer, Centerpulse or their successors, particularly during the course of the payment of the claim and determination of the amount of benefits.

### PLAINTIFF'S EMPLOYMENT AND DISABILITY

21.     Plaintiff was employed full-time by IntraTherapeutics, Inc. (hereinafter "IntraTherapeutics") as a Technical Sales Representative from 1998 through 2001.   A true and correct copy of Plaintiff's job description is attached hereto and made a part hereof as Exhibit "A".

22.     At the time of his hiring, Plaintiff's base salary was $55,000, plus commission of 15% of stent sales directly made during fiscal 1999 (ending March 31, 1999), the option to purchase 8,000 shares of stock vesting over four years, participation in the employee benefit plan, including participation in the group long-term disability plan and other terms as set forth in his hiring letter dated November 4, 1998.  A true and correct copy of the letter is attached hereto and made  a part hereof as Exhibit "B".

23.     On November 9, 1998, his start date, Plaintiff received a copy of the IntraTherapeutics employee handbook, for which he executed an acknowledgement form.  A true and correct copy of the form is attached hereto and made a part hereof as Exhibit "C".

24.     The majority of Plaintiff's compensation would come from commission on products sold throughout his tenure as a Technical Sales Representative for IntraTherapeutics and its successors in interest.

25.     On or about June 1, 1999, Plaintiff received a 6 % raise and a stock option grant for 2,000 shares as a result of his exemplary performance.   A true and correct copy of an employee change form is attached hereto and made a part hereof as Exhibit "D".

26.     On or about June 9, 1999, Plaintiff received an annual review, where it was determined that he was "Exceptional" in all areas of evaluation.   A true and correct copy of Plaintiff's evaluation is attached hereto and made a part hereof as Exhibit "E".

27.     In three of the first four months of 1999, Plaintiff exceeded his sales goals.

28.     On or about June 9, 1999, Plaintiff received a copy of the IntraTherapeutics employee handbook, for which he executed an acknowledgement form.   A true and correct copy of the form is attached hereto and made a part hereof as Exhibit "F".

29.     In December 1999, at a mid-year review, it was noted that Plaintiff had again exceeded all of his sales goals and as of November 1999, was the number 5 salesman, company wide.   A true and correct copy of the mid-year evaluation is attached hereto and made a part hereof as Exhibit "G".

30.     On March 5, 2000, in recognition of reaching sales goals in July and October 1999 resulting in sales of more than $300,000, Plaintiff was awarded  stock options for 250 shares.   A true and correct copy of the award is attached hereto and made a part hereof as Exhibit "H".

31.     On April 25, 2000, through a sales incentive program, Plaintiff was awarded 125 shares in stock options for achieving more than $500,000 in sales for the company.   A true and correct copy of the stock option award is attached hereto and made a part hereof as Exhibit "I".

32.     On April 26, 2000, through a sales incentive program, Plaintiff was awarded 1,200 stock options for achieving more than $110,000 in sales in two months for the company.   A true and correct copy of the stock option award is attached hereto and made a part hereof as Exhibit "J".

33.     A performance review completed between May 30, 2000 and June 9, 2000, Plaintiff was noted to be exceptional in all categories, but one where he was exceeding expectations.  As a result, he received a 7% raise.  A true and correct copy of the performance evaluation is attached hereto and made a part hereof as Exhibit "K".

34.     The 2000 performance review resulted in his base pay being raised to $60,333 plus commissions.

35.     At his mid-year 2000 review, Plaintiff was ranked number 2 in the company in sales.  See Mid-Year Performance review, attached hereto and made a part hereof as Exhibit "L".

36.     Upon information and belief, Sulzer Medica purchased IntraTheraputeuctics in January, 2001.

37.     Plaintiff then became employed by Sulzer Medica as a Sales Representative.

38.     A 2001 Total Rewards Summary for Plaintiff, which described benefits offered to him as of April 1, 2001 by Sulzer Medica, showed that Plaintiff participated in both short and long-term disability benefits programs.  A true and correct copy of the 2001 Total Rewards Summary is attached hereto and made a part hereof as Exhibit "M".

39.     After six months of disability, Plaintiff would receive $3,152.40 per month in long-term disability benefits if he was eligible.  See Exhibit "M".

40.     In an annual review completed in February 2001, Plaintiff was rated as commendable or exceptional in all areas of work.  As a result, he received a 5.5% salary increase. A true and correct copy of the evaluation is attached hereto and made a part hereof as Exhibit "N".

41.     As a result of this raise, Plaintiff's base salary was $63,047.92 as of March 5, 2001. Status Change Notice, Exhibit "O".

42.     On February 2, 2001, Plaintiff was involved in an automobile accident where he was rear-ended while travelling west on the Schuylkill Expressway at the interchange with Route 202.

43.     As a result of that accident, Plaintiff injured his neck, upper and lower back, left shoulder, with pain radiating from his back in his left hip, legs and ankles.

44.     Despite this accident, which caused disc bulges at L1-2, L3-4, an annular tear at L4-L5 and a protrusion at L5-S1, Plaintiff continued in his work as a tech sales rep for Sulzer.

45.     On February 21, 2002, Plaintiff acknowledged receipt of a new employee handbook prepared by Sulzer Medica.  A true and correct copy of the handbook is attached hereto and made a part hereof as Exhibit "P".

46.     The 2002 Handbook provides, on page 19, that Total Monthly Earnings "does include commission, but does not include bonuses, overtime pay or any other extra compensation.  If your current monthly earnings include commissions, your Total Monthly Earnings will be averaged over the previous 24-month period of your employment  (or will be averaged from your date of employment, whichever is less)."  Exhibit "P", p. 19.

47.     Upon information and belief, in May 2002, Sulzer Medica became known as Centerpulse, Inc. to avoid association with the Sulzer Medica name, as Sulzer Medica was the subject of extensive litigation at the time.

48.     Plaintiff continued in his position as a Technical Sales Representative despite the corporate name change.

49.     A Total Rewards Summary for 2002 showed Plaintiff eligible for Short Term Disability payments of $5,253.99 per month (base salary only) and long-term disability payments of $5,387.15 (base plus commission).  A true and correct copy of the Total Rewards Summary is attached hereto and made a part hereof as Exhibit "Q".

50.     Plaintiff kept working during his treatment, despite his pain, continuing to work until May 31, 2002.

51.     Plaintiff's date of disability was June 1, 2002, for purposes of both the Long Term Disability Policy issued by SunLife as part of an employee benefit plan and for the Salary Continuation Benefits Plan.

52.     At no point in time has Plaintiff's status as being totally disabled been questioned.

53.     Beginning on June 3, 2002, Plaintiff began collecting Salary Continuation Benefits or Short Term Disability which paid him his base salary ($5,254 per month) for six months.

54.     As of July 22, 2002, Plaintiff made application for leave under the Family Medical Leave Act.  See Request for Leave, attached hereto and made a part hereof as Exhibit "R".

55.     As a part of his benefits package as a Centerpulse/Sulzer Medica employee, Plaintiff is a beneficiary under a Group Long Term Disability Insurance Policy issued to Sulzer Medica Centerpulse by Sun Life effective January 1, 1996, Policy Number 99257.  Plaintiff is not in possession of a copy of the policy of insurance as issued at the time of his accident, or at the time of his application.

56.     Plaintiff has never received a copy of the Sun Life Disability Policy at issue in this matter.

57.     Plaintiff has made repeated demands to Sun Life for a copy of the policies at issue, but Sun Life has failed and refused to provide copies of the policies.

58.     Effective August 1, 2002, Sulzer/Centerpulse amended the terms of the LTD policy with Sun Life.   The most significant change was the elimination of commissions from the calculation of Total Monthly Earnings.   See Exhibit "S", p.7, August 1, 2002 Summary Plan Description.

59.     At no time did Sulzer/Centerpulse notify Plaintiff or any other employee of the change in the LTD plan.

60.     Sulzer/Centerpulse never provided a copy of the August 1, 2002 Summary Plan Description to Plaintiff.

61.     Upon information and belief, Centerpulse and/or Sulzer Medica have paid all premiums required under the Sun Life Policy.

62.     As of June 1, 2002, Plaintiff was unable to return to work, due to his disability.

63.     In the Summary Plan Description posted on the Sulzer Medica web site, as of January 15, 2003, Total Monthly Earnings was described as including commissions, using language identical to that in paragraph 44, above.  A true and correct copy of the printout from the web site is attached hereto and made a part hereof as Exhibit "T".

64.     Upon information and belief, Sulzer/Centerpulse knew it had conflicting Summary Plan Descriptions and knew its website did not contain accurate information more than 6 months after the change in the LTD policy.

65.     On or about October 10, 2002, Plaintiff made application for Long-Term Disability Benefits under the Sun Life Policy.  See LTD benefits application attached hereto and made a part hereof as Exhibit "U".

66.     Those benefits were granted effective on November 28, 2002.

67.     Sun Life began paying disability benefits as follows, calculated on Mr. Johannessen's base salary, only:

| Month Paid | Amount |
|------------|--------|
| December 2002 | $2,945.57 |
| January 2003 | $3,152.40 |
| February 2003 | $3,152.40 |
| March 2003 | $3,152.40 |
| April 2003 | $3,152.40 |

| May 2003 | $3,152.40 |
|---|---|
| June 2003 | $3,152.40 |
| July 2003 | $3,152.40 |
| August 2003 | $3,152.40 |
| September 2003 | $3,152.40 |
| October 2003 | $3,152.40 |
| November 2003 | $3,161.86 |
| December 2003 | $3,246.97 |
| January 2004 | $3,246.97 |
| February 2004 | $3,246.97 |
| March 2004 | $3,246.97 |
| April 2004 | $3,246.97 |
| May 2004 | $3,246.97 |
| June 2004 | $3,246.97 |
| July 2004 | $3,246.97 |

68.     The amount being paid in disability benefits is being calculated on Mr. Johannessen's Total Monthly Earnings without commissions included.

**THE SUN LIFE POLICY**

69.     Pursuant to the terms of the Sun Life Summary Plan Description, Plaintiff was in an "Eligible Class" at the time of his application for benefits as he was a Regular Full-Time employee working a minimum of 30 hours a week.  See Exhibit "T".

70.     Pursuant to the terms of the Sun Life Summary Plan Description, if a member of an Eligible Class becomes totally disabled, he/she is entitled to receive sixty percent (60%) of

his/her basic monthly earnings, not to exceed the maximum monthly benefit of $10,000, less other income benefits.

71.     Total Monthly Earnings is described in the Summary Plan Description provided to Plaintiff as "Your basic monthly earnings as reported by your Employer immediately before the first date of your Total or Partial disability begins.  Total Monthly Earning does include commissions, but does not include bonuses, overtime pay or any other extra compensation.  If your current monthly earnings includes commissions, your Total Monty Earnings will be averaged over the previous 24 month period of your employment."  See Exhibit "T".

72.     Sun Life has paid disability benefits to Plaintiff at a rate which does not include his commissions averaged over 24 months prior to his disability.

73.     Sun Life has made payments in accordance with the Summary Plan Description effective August 1, 2002, which expressly excludes commission from the definition of Total Monthly Earnings.

74.     The policy in effect at the time Plaintiff became totally disabled on June 1, 2002 provided that Total Monthly Earnings includes Commissions.

75.     With commissions calculated over a 24 month (June 2000 – June 2002) average, Plaintiff's Total Monthly Earnings under the policy is $9,582.24.

76.     The monthly benefit due and owing to Plaintiff under the policy in effect on June 1, 2002, the date of disability is $5,749.34.

**COUNT I**
**VIOLATIONS OF ERISA BY SUN LIFE**

77.     Plaintiff hereby incorporates paragraphs one (1) through seventy-six (76) above as if set forth at length herein.

78.     The Sun Life Policy is an "employee welfare benefit plan" pursuant to ERISA, 29 U.S.C. § 1002(1)

79.     Plaintiff is a participant and/or "beneficiary" under the Sun Life Policy pursuant to ERISA, 29 U.S.C. § 1002(8) in that, <u>inter</u> <u>alia</u>, he is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may be entitled to a benefit thereunder."

80.     Defendant Sun Life is a fiduciary under the Policy in that, <u>inter</u> <u>alia</u>, it has exercised, or has the power to exercise authority or control over a fiduciary function, or it exercises <u>de</u> <u>facto</u> control over the parties with such authority or control.

81.     Plaintiff has exhausted all remedies under the Sun Life Policy, or, in the alternative, any remedies that Plaintiff has not exhausted are inadequate and further pursuit of such remedies would be futile.

82.     Plaintiff has satisfied any and all standards for eligibility for disability benefits under the Sun Life Policy.

83.     Sun Life's failure to pay Plaintiff's monthly disability payments, including the value of his commissions in his Total Monthly Earnings is a violation of ERISA.

84.     Plaintiff is entitled to payment of benefits from the policy in effect on his date of disability, June 1, 2001.

85.     Pursuant to 29 U.S.C. § 1132(a), Plaintiff is entitled to recover all amounts due and owing by reason of Sun Life's failure to make long-term disability payments to him as a beneficiary under the Policy, to enforce his rights under the terms of the Policy and to clarify his rights to future benefits under the terms of the Policy.

86.     Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to an award of reasonable attorney's fees and costs for Sun Life's failure to make appropriate disability payments under the terms of the Policy.

87.     Plaintiff is also entitled to prejudgment interest for all benefits due to Sun Life's failure to make appropriate disability payments under the terms of the Policy, as well as a declaratory judgment that Plaintiff is entitled to such relief now and into the future.

88.     Beginning on April 26, 2004, Plaintiff demanded copies of the policies at issue, in writing from Sun Life.  See Email attached hereto and made a part hereof as Exhibit "V".

89.     Joan Brasier, an agent, servant, workman and/or employee of Sun Life, indicated she would make copies of the policies available has failed and refused to do so.  The written request followed upon a telephone call to Ms. Brasier, the claims person adjusting Mr. Johannessen's claim.  See Exhibit "V".

90.     No response was received from Sun Life in response to this first written request for information.

91.     On May 21, 2004, an additional request was made for the policies, also in writing. See Exhibit "V".

92.     Thirty (30) days passed from the initial written request on May 26, 2004.

93.     On June 3, 2004, Ms. Brasier advised that the matter "had been referred out for review" and she was unable to provide any further information.  See Exhibit "V".

94.     On July 2, 2004, another request for the policies was made and ignored.  See Exhibit "{V".

95.     At time of the filing of the complaint, more than hundred (100) days had passed since the request for the policies.

**WHEREFORE**, Plaintiff, Nils Johannessen, respectfully requests this Honorable Court to enter judgment in his favor and against Defendants Sun Life and award Plaintiff:

a.      all benefits wrongfully denied to him by Defendant;

b.      $100 per day under 29 U.S.C. §1132(c)(1)(B) for each day after May 26, 2004 that copies of the policies have not been provided;

c.      prejudgment interest;

d.      reasonable attorney's fees and costs; and

e.      all other relief that this Court deems appropriate, including declaratory

relief that Plaintiff is entitled to disability payments now and in the future.

**COUNT II**
**VIOLATION OF ERISA BY CENTERPUSLE, SULZER MEDICA,**
**ZIMMER HOLDINGS AND EV3**

96.     Plaintiff hereby incorporates paragraphs one (1) through ninety-five (95) above as if set forth at length herein.

97.     At all times relevant hereto Defendants, Centerpulse, Sulzer Medica, Zimmer Holdings and EV3 were planned administrators and/or fiduciaries as those terms are defined under the Employee Retirement Income Security Act of 1973.

98.     As a result of their status as fiduciaries, Defendants, Centerpulse, Sulzer Medica, Zimmer Holdings and EV3 had an obligation to act with the utmost of good faith and fair dealing and in full recognition of the fiduciary responsibilities and obligations they had to Plaintiff.

99.     At all times material hereto, Plaintiff was a beneficiary under an employee welfare benefit plan for which Defendants were or are plan administrators and/or fiduciaries.

100.    At all times material hereto, Plaintiff is or was a participant and/or beneficiary under the terms of an employee welfare benefit plan.

101.    The Sun Life Group long-term disability benefit policy provided to Plaintiff through his employment with Defendants is part of an employee welfare benefit plan as that term is defined in ERISA.

102.    Defendants are fiduciaries under the terms of the policy and the statute in that they exercise or have the power to exercise authority and control over fiduciary functions or exercise de facto control over the parties with such authority.

103.    Plaintiff satisfied any and all standards for eligibility for disability benefits under the Sun Life policy.

104.    As a part of their fiduciary obligations and duties and in their roles as plan administrators, Defendants were required to provide certain documentation to Plaintiff during the course of his employment because of his status as a participant and/or beneficiary under the employee welfare benefit plan.

105.    It is believed and, therefore, averred that effective August 1, 2002, Defendants made changes to the Sun Life group life disability policy and failed to communicate those changes to the participants in the employee welfare benefit plan, including Plaintiff, Nils Johannessen.

106.    It is further alleged that the Defendants as fiduciaries and plan administrators allowed erroneous misinformation to remain on the company's website, provided Summary Plan Descriptions which were outdated, and provided improper information.

107.    The change in employee welfare benefit plan, particularly the change in the group long-term disability policy issued by Sun Life had material and significant effects on Plaintiff, Nils Johannessen.

108.    Had Plaintiff been made aware of the changes in the long-term disability benefit plan definition of Total Monthly Earnings which removed commissions from the Total Monthly Earnings under the August 1, 2002 amendments, Plaintiff would have obtained additional private long-term disability insurance to cover the lost income.

109.    Defendants have allowed contradictory and confusing Summary Plan Descriptions to be in place.

110.    Defendants have violated ERISA in that they did not properly distribute Summary Plan Descriptions and/or policies to the participants of the plan.

111.    As a result of this breach of their fiduciary duties, Plaintiff has incurred various losses, including the loss of the value of the difference between his monthly long-term disability benefit calculated only on his base salary versus that calculated on base salary, plus commissions.

112.     Pursuant to 29 U.S.C. § 1132(a), Plaintiff is entitled to recover all amounts due and owing for Defendants' failure to make payments to him as required under the Summary Plan Description published and circulated to all employees.

113.     Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to an award of reasonable attorney's fees and costs for Defendants' failure to make payments under the terms.

114.     Plaintiff is entitled to prejudgment interest for all benefits, as well as declaratory judgment that he is entitled to such relief now and in the future.

**WHEREFORE**, Plaintiff, Nils Johannessen, respectfully requests this Honorable Court enter judgment in his favor and against the Defendants, Centerpulse, Sulzer Medica, Zimmer Holdings and EV3, and award Plaintiff:

    a.     all benefits wrongfully denied to him, including the difference between those benefits for salary alone versus salary, plus commission;

    b.     prejudgment interest;

    c.     reasonable attorney's fees and costs; and

    d.     all other relief this Court deems appropriate, including declaratory relief that the Plaintiff is entitled to those payments now and into the future.

## COUNT III
## BAD FAITH PURSUANT TO 42 Pa. C.S.A. § 8371
## AGAINST DEFENDANT SUN LIFE

115.     Plaintiff hereby incorporates paragraphs one (1) through one hundred fourteen (114) as if set forth at length herein.

116.     Since November 28, 2002, Sun Life improperly failed to pay the appropriate amount of Plaintiff's disability benefits under the Sun Life Policy, even though it knew, or should have known, that Plaintiff was entitled to commissions, including his Total Monthly Earnings.

117.    Defendant, Sun Life, has also acted in bad faith because it has committed acts which would violate the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171.1, et seq., including, but not limited to:

a.    misrepresenting pertinent facts, as well as policy provisions relating to the coverage at issue;

b.    failing to acknowledge and act promptly upon written and oral communications;

c.    refusing to pay claims in a timely fashion and/or interrupting, delaying or withholding benefits without conducting a reasonable investigation based upon all available information;

d.    refusing and failing to respond to requests from Plaintiff for information regarding the plan and provide copies of the policies at issue after repeated requests;

e.    making claims payments without an accompanying statement of which policy payment is being made on; and

f.    making misrepresentations as to the terms of the policy, and such other conduct as may be discovered.

118.    Defendant, Sun Life, failed to make full payment of Plaintiff's disability benefits under the Policy in breach of its duty of good faith and fair dealing to Plaintiff and solely for its own financial self-interest.

119.    Defendant, Sun Life's actions in failing to pay, interrupting or delaying Plaintiff's disability benefits under the Policy were outrageous, malicious, wanton, reckless, willful and/or oppressive.

120.     Pursuant to 42 Pa. C.S.A. § 8371, Plaintiff is entitled to benefits that have been withheld or improperly delayed under the Policy, interest on all benefits to which he is contractually entitled, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff, Nils Johannessen, respectfully requests this Honorable Court to enter judgment in his favor and against Defendant, Sun Life and award Plaintiff:

        a.     the benefits withheld under the Sun Life Policy;

        b.     interest;

        c.     punitive damages;

        d.     attorney's fees; and

        e.     court costs.

**COUNT IV**
**NEGLIGENT AND OR INTENTIONAL MISREPRESENTQATION AGAINST**
**SULZER MEDICA, CENTERPULSE , ZIMMER HOLDINGS AND EV3**

121.     Plaintiff hereby incorporates paragraphs one (1) through one hundred twenty (120) as if set forth at length herein.

122.     At all times material hereto, Centerpulse, Sulzer Medica, Zimmer Holdings and EV3 through their human resources departments maintained control and distribution of all employee benefit information to its employees, including Plaintiff, Nils Johannessen.

123.     In February 2002, Sulzer Medica, through the actions of its employees and through the actions of its human resources department circulated an updated employee handbook for which it required all employees to execute a form acknowledging receipt.

124.     Sometime after February 1, 2002, Centerpulse, Sulzer Medica and/or its successors amended or modified the employee handbook, including the Summary Plan Description as to the group long-term disability insurance provided through Sun Life which modified the definition of Total Monthly Earnings to eliminate commissions from the calculation of Total Monthly Earnings for purposes of determining the amount of long-term disability benefits.

125.    Centerpulse, Sulzer Medica and the other Defendants posted on its website sometime after May 22, 2002 and through at least January 15, 2003 all of its benefits information, including the Summary Plan Description of the various benefits available.

126.    The Summary Plan Description posted on the website from May 22, 2002 through at least January 15, 2003, indicated that the long-term disability benefit coverage would be provided for Total Monthly Earnings, including commissions rather than without commissions.

127.    Defendants knew that its employees, including Plaintiff, would rely on the information posted on the web page.

128.    Defendants knew that its employees would rely on the Summary Plan Descriptions it distributed with the employee handbook in February of 2002.

129.    Plaintiff relied upon the Summary Plan Description which was on the Sulzer Medica/Centerpulse web page in making his decisions to choose not to purchase additional long-term disability benefits to cover that amount of which would be lost if commissions were eliminated from the calculation of Total Monthly Earnings.

130.    When employed by his previous employer, Plaintiff had obtained additional LTD insurance as commissions were not included in the definition of Total Monthly Earnings.

131.    As a result of this justifiable reliance, Plaintiff has suffered a loss.

132.    Defendants negligently and/or intentionally misrepresented the terms of the group long-term disability benefit available to Plaintiff.

133.    Defendants negligently represented that the benefits, including those described in the Total Rewards Summary would meet the needs of Plaintiff.

134.     In making such negligent misrepresentations, Defendants purported to exercise the skill and competency compatible with their profession as a benefit provider and/or employers upon whom Plaintiff would rely.

135.    Defendants knew that when they negligently represented the status of benefits, and advised Plaintiff that he would be compensated for commissions in calculating his Total Monthly Earnings for purposes of long-term disability, that Plaintiff required such information for a serious purpose so that he could ensure that he was properly protected in the event of a serious physical injury and provide for his family.

136.    Defendants knew that Plaintiff's earnings from commissions far exceeded the base salary paid to Plaintiff by Defendants.

137.    Defendants also knew that Plaintiff intended to rely upon Defendants' negligent misrepresentations that the benefits would meet his needs and requirements.

138.    Defendants knew that the information that was given to Plaintiff was false in that effective August 1, 2002, Defendants had changed the terms of the group long-term disability contract without advising any of the participants in the plan and, Plaintiff specifically, that such changes were made.

139.    Plaintiff has suffered injuries as a result of his reliance upon Defendants negligent and intentional misrepresentations, including compensatory damages, consequential damages, punitive damages, emotional distress, attorney's fees, interest and other losses to be established at trial.

**WHEREFORE**, Plaintiff, Nils Johannessen, respectfully requests this Honorable Court enter judgment in his favor and against Defendants.


**COUNT V**
**EQUITABLE ESTOPPEL AGAINST SULZER MEDICA,**
**CENTERPULSE , ZIMMER HOLDINGS AND EV3**

140.    Plaintiff incorporates paragraphs (1) through one hundred thirty-nine (139) above as if set forth at length herein.

141.    The above-described misrepresentations by Employer Defendants were material in that, inter alia, Plaintiff would have purchased additional private disability coverage to replace the income eliminated by the change in the policy by removing commissions from "Total Monthly Earnings".

142.    Plaintiff had the opportunity to purchase such coverage but did not do so based upon the reliance that commissions, which made up a significant portion of his earnings, were included in the long term disability insurance offered by his employers.

143.    Under the circumstances, a reasonably prudent person would suppose that Defendants' misrepresentations were intended to be acted upon as true.

144.    Plaintiff was ignorant of the fact that the Long-Term Disability Policy had been changed in that he was not provided with the updated Summary Plan Description and was never provided with a copy of the policy and did not know that his commissions would not be included in the calculation of Total Monthly Earnings in the event of a Total Disability.

145.    Plaintiff justifiably and reasonably relied in good faith upon Defendants' misrepresentations.

146.    Plaintiff's reliance was such that it changed his position for the worse.

147.    No detriment to Defendants would occur if they were equitably estopped from asserting any rights against Plaintiff that they may have at law or in equity because Defendants are not wholly innocent parties.

148.    Defendants must then be precluded from asserting any rights against Plaintiff that might have otherwise existed at law and in equity.

**WHEREFORE**, Plaintiff, Nils Johannessen, respectfully requests this Honorable Court to enter judgment in his favor and against Defendants and award Plaintiff:

a.      all benefits wrongfully denied to him by Defendants since December 2002;

b.      prejudgment interest;

c.      reasonable attorney's fees and costs; and

d.      all other relief that this Court deems appropriate, including declaratory

relief that Plaintiff is entitled to disability payments now and in the future.

Respectfully submitted,

**MARK J. HILL & ASSOCIATES, P.C.**

BY:_____
        Mark J. Hill, Esquire
        Diana L. Moro, Esquire
        1515 Market Street, Suite 1710
        Philadelphia, PA 19102-1706
        (215) 564-1100
        (215) 564-1102 (facsimile)

Attorneys for Plaintiff, Nils Johannessen

Date: _____